## STROTHER, et v OHIO CASUALTY INSURANCE CO

Common Pleas Court, Hamilton Co

Decided January 3, 1939

John P. Strother and Saul M. Greenberg, Cincinnati, for plaintiffs.

McKeehan, Merrick, Arter & Stewart,

Cleveland, and August A. Rendigs, Jr., Cincinnati, for defendant.

## OPINION

By BELL, J.

This is an action brought by the plaintiffs, in which they seek an injunction. The cause was submitted to the court upon the pleadings and an agreed statement of facts. There is no dispute about the facts, the question is entirely one of law.

In the petition it is set forth that John P. Strother and Saul M. Greenberg were duly admitted by the Supreme Court of Ohio, to practice law in all the courts of the state of Ohio, and that they have been engaged in the active practice of the law since their admission, and are members of the Bar of Hamilton County and the state of Ohio. It is set forth that the defendant is a corporation organized and existing under the laws of this state, and engaged in the insurance business within this state; that the defendant has entered into written contracts with a large number of persons, firms or corporations in this county and throughout the state, these contracts being automobile, elevator, owner, landlord and tenant, liability insurance policies and that among the provisions in each of the contracts are contained the following two provisions:

"1. To insure within specified limits the assureds named in said policies against all direct loss or expense by reason of liability imposed upon said assureds by law for damages by reason of the ownership, maintenance or use of the automobiles, elevators, and/or premises described in said policies on account of accidents covered by said policies.

"2. To defend in the name and on behalf of said persons, firms and/or other corporations, named as assureds, any and all law suits, even if groundless, false or fraudulent, brought against said persons, firms and/or other corporations named as assureds to recover damages on account of any accidents covered by said policies."

By virtue of these two provisions in the contracts it is claimed that the defendant, by and through its duly authorized agents and attorneys, appears in court, prepares and files motions and demurrers, pleadings, takes depositions, interviews and prepares statements of the cases, subpoenas witnesses, and does all and singular all acts necessary for the full management and conduct of the trial of law suits, prepares and files motions for new trial, prepares bills of exception and proceedings in error, and that the defendant completely and exclusively defends and controls the conduct of lawsuits brought against the assured when the cause of action is covered by the policy, and does these acts even if such suits are groundless, false or fraudulent, as well as when brought in good faith.

Plaintiffs further allege that the defendant through its duly authorized agents and attorneys, settles, adjusts and compromises claims made on account of accidents covered by such policies, and in connection therewith drafts legal documents and releases, and gives legal advice with reference to said matters.

Plaintiffs claim that the defendant has no legal right or authority to practice law either directly or indirectly, by employing regularly licensed attorneys to practice law for it, and allege that the defendant is engaged in the unauthorized and unlawful practice of law, and that it will continue so to do unless restrained and enjoined by the court.

It is further claimed that this is a transgression of the rights of plaintiffs, who are members of the Bar, and that the action is brought by them on behalf of themselves and all other members of the legal profession wthin this state, and that they have no adequate remedy at law.

The relief sought, is a perpetual injunction against the defendant from writing contracts containing provision number two as above set forth.

An answer was filed by the defendant, which admits every claim of the plaintiffs with the exception that it employes laymen for the purpose of negotiating settlements or doing any act which might be considered the practice of law; the answer sets forth that by making this contract of indemnity the defendant company thereafter has a direct pecuniary and financial interest in any accident covered by its policies, and by reason of such pecuniary and financial interest that it has the right to do the things of which the plaintiffs complain.

The defendant asks that the plaintiff's petition be dismissed.

A reply was filed by the plaintiffs, in which the affirmative allegations of the answer are denied.

In the agreed statement of facts it is admitted that the defendant has entered into a large number of these contracts and specimens marked Exhibits 1, 2 and 3 covering Automobile Liability, Special Elevator Liability, Owner's, Landlords and Ten-

ants Public Liability Policies are attached thereto; that each and every one of those classes of policies written by the defendant contains the provisions herein numbered 1 and 2.

It is further agreed that the defendant employs no laymen as claim adjusters and employs no one except regularly licensed attorneys at law to adjust claims or conduct the defense of suits brought against the insured.

The question presented for consideration is whether or not, under these pleadings and the agreed statement of facts, the defendant is engaged in the unauthorized and unlawful practice of the law.

This is a subject which has become quite controversial in the last few years. Many cases have been decided in this state wherein the cause of action was based upon the claim of unauthorized and unlawful practice of the law. It has been held, and rightfully so, that a corporation has no right to enter into a contract to defend actions which are instituted and threatened actions on behalf of persons, firms or corporations where the insurer has no financial interest in the outcome of the litigation. Those cases have for their foundation the proposition that a contract simply to defend against actual or threatened litigation for a fee paid by the insured to the insurer is a contract by the insurer to engage in the practice of the law, which is unauthorized and unlawful. Those decisions can not be applied here for the reason that it is agreed that the defendant company itself will pay, within the terms of the policy, such sums as the insured would otherwise be required to pay.

The question for decision may be stated thus: Is it an unauthorized and unlawful practice of the law for an insurance company, which contracts to pay within the limits of the policy such sum as the insured, except for the policy, would be required to pay, entitled to employ its own attorneys to take charge of, direct and control litigation within the terms of the policy, instituted against the insured, and to adjust any claim against the insured within the terms of the policy?

It is claimed by the defendant that this is no longer an open question in this state, that the Supreme Court, as well as other inferior courts, have recognized the legality of these contracts and have entered judgments against the insurance companies in cases where they failed and refused to defend under contracts such as here in question, where the insured, after such failure and refusal, defended at its own expense.

On behalf of plaintiffs it is claimed that those cases proceeded without any question being raised as to the legality of the provision here under consideration.

It is my opinion that there is no case in this state in which the question here presented has been directly decided.

On the one hand, several cases may be found where insurance companies having no direct or pecuniary interest in the result of a lawsuit or of an accident which may give rise to a lawsuit, have been enjoined from writing contracts to defend such lawsuits or settle such claims. On the other hand, cases may be found wherein insurance companies, writing contracts in substance the same as this defendant, have been held liable for the failure to defend. However in this latter group of cases the provisions to defend have not been attacked as illegal; therefore, so far as Ohio is concerned, there is no precedent which has been established which will control the decision of this case.

Sec. 9510, GC, provides among other things that a company may be organized under this chapter to make insurance "to indemnify persons and corporations other than employers against loss or damage for personal injury or death resulting from accidents to other persons or corporations."

That is the statute under which this corporation assumes to ao what has been done; there can be no question but that corporations are specifically granted authority to write policies to indemnify persons against loss or expense by reason of personal injury or death to others. The terms of each particular contract define its limits, and fix the amount the insurer agrees to pay.

If these policies stopped at that point no one could claim reasonably or logically that the company was doing anything illegal or unauthorized; however, all these policies also provide that the insurer agrees to defend in the name and on behalf of the insured any and all lawsuits, even if groundless, false or fraudulent, brought against the insured within the terms of the policies. It is this provision of the policy which is the subject of attack.

In determining this question the policy must of necessity be analyzed to determine what it is that the company agrees to do. For the purpose of this illustration we will use an hypothetical policy of ten thousand dollars. By the terms of such a policy the insurance company contracts that should the insured injure or kill some one, it will pay, in place of the insured, if there is legal liability, the sum

of ten thousand dollars, and in case a lawsuit was filed under such a policy and a verdict rendered for ten thousand dollars or less, the person who actually committed the wrong would not be called upon to compensate for such injury or death. The insurance company would pay the judgment and costs, as well as attorney's fee, incurred in the defense of the claim. Therefore, to the extent of the policy, the insurance company has a direct pecuniary, financial interest, in any accident that occurs involving a claim against any person covered by one of its policies.

That being true, the next and last question for consideration and determination is whether or not the insurance company has the right to furnish counsel of its own choosing and defend in the name of the person against whom the suit is brought.

This court has long been of the opinion that no real harm could be done if suits were permitted by plaintiffs against the defendant who caused the injury and the indemnity company. That proceeding is authorized by statute when suits are brought against police officers and their sureties for failure to perform their duties. But the law has made no provision for joining a defendant who has committed a wrong against another such as those covered by these policies, and the insurance company. Nevertheless the insurance company has a direct pecuniary interest in the outcome of the lawsuit, and having a direct and pecuniary interest in the outcome of the lawsuit, can it be said that it has no right to protect that interest?

In my opinion the insurance company has a right to protect that pecuniary interest, and has a right to do so by attorneys of its own choosing; that such procedure is not the practice of law in any sense of the word. The company is simply protecting its own rights in that litigation by having counsel of its own choosing to represent it; it makes no difference whether the attorneys are hired by the case, whether they are hired by the year or whether they are the same attorneys in each and every case, or whether the company changes attorneys with each and every case, so long as the company does not employ laymen to do any of these acts, it is not engaged in the practice of law. The company is defending against claims and lawsuits in which it is directly and financially interested.

The defendant is not engaged in the illegal and unauthorized practice of law under these conditions and it follows that the petition of the plaintiff should be and

hereby is dismissed, and a decree may be drawn accordingly.